COOKS, Judge.
This is a suspensive appeal filed by the employer, Riviana Foods, Inc., and its insurer, The Travelers Insurance Company, from a decision by the Office of Workers’ Compensation in favor of Lester J. Bo-urque. Bourque sustained an injury in the performance of his work related duties on August 29, 1989 when several sacks of flour fell off a pallet hitting him backside.
The parties stipulated at trial that Bo-urque was paid compensation benefits at the rate of Two Hundred Thirty Nine Dollars and Forty Cents ($239.40) per week from the date of injury to April 17, 1990; and, further, that all medicals incurred to the date of trial had been satisfied by the employer or its carrier.
A hearing officer rendered judgment on March 4, 1991 awarding compensation benefits to Bourque from April 17, 1990, the date the employee ceased working, to August 2, 1990, with legal interest on all payments plus a twelve percent (12%) penalty on benefits due; and further assessed against defendants attorney’s fees in the amount of Fifteen Hundred Dollars ($1,500.00) with all costs, including expert witness fees.
The employer assigns three (3) trial court errors in this appeal. Appellant urges that “the hearing officer committed manifest error in awarding weekly indemnity benefits and assessing penalties and attorneys’ fees, without even making a determination of disability.” Finding merit in this assignment for an error of law, we pretermit our examination of the other assignments of error pending remand of the case.
This dispute arose from a complaint filed by the injured employee with the Louisiana Department of Labor, Office of Workers’ Compensation, alleging that the employer prematurely discontinued paying weekly benefits because his disability had not ceased. Bourque apparently alleged at trial that somehow the results of his examination and treatment by both Dr. Jeff P. Budden and Dr. Clifton Shepard, orthopedists, were manipulated by the employer and its carrier. The record reveals that immediately following the accident, Bo-urque was taken to Abbeville General Hospital and examined by Dr. Budden who concluded upon review of x-rays that Bo-urque sustained a T-7 compression fracture of the vertebrae which later appeared completely healed.
At some point, Bourque requested a second opinion concerning his condition and he was referred to Dr. Shepard on December 18, 1989. Dr. Shepard also x-rayed Bo-urque’s back. The x-rays revealed a twenty-five percent (25%) compression fracture of the T-7 vertebrae, located around the middle of Bourque’s shoulder blade. Regarding the significance of this finding, Dr. Shepard explained that:
“A twenty-five percent (25%) compression fracture in the lower back would yield a [sic] more significant activity restrictions, but in the T-7 area this is basically the rib cage that is attached to the spine in that area, and the rib cage stabilizes the thoracic spine. And a twenty-five percent (25%) compression fracture is really going to yield relatively little impairment.”
On March 5, 1990, Dr. Budden addressed a letter to Riviana Foods finding no contraindication to Bourque returning to his job as a paddy machine operator upon completion of a physical therapy program.
On January 24, 1990, Dr. Shepard also recommended physical therapy for Bo-urque and instructed him to return on February 14, 1990 for re-evaluation. Bourque did not appear on this date.
On April 18, 1990, Bourque returned to work at Riviana Foods in his former capacity as a paddy machine operator. Unable to perform a full day’s work, Bourque visited the office of Dr. Budden crying and complaining of intolerable right lower chest discomfort. Bourque described the pain to Dr. Budden as radiating from his lower thoracic spine, beneath the infrascostal margin of his lower ribs, and around to *671 wards his sternum. Bourque further stated to Dr. Budden that his pain was always present, and was becoming progressively more severe. Dr. Budden referred Bo-urque to Abbeville General Hospital for follow-up x-rays. However, on review of these x-rays, he “could not detect any abnormality, other than the previous T-7 compression fracture” which appeared completely healed. He opined that he was “at a loss to explain why Mr. Bourque [was] continuing to experience increasing pain....” He again released Bourque to return to regular work duties on May 10, 1990.
On May 18, 1990, Bourque returned to Dr. Shepard’s office relating he had been under the care of Dr. Budden; but he had not completed physical therapy as recommended by both physicians. Dr. Shepard also felt Bourque's fracture should have healed and once more recommended him for three (3) weeks of physical therapy, scheduling a return visit for re-evaluation. He continued Bourque on anti-inflammatory medication.
On June 11, 1990, Bourque arrived at Dr. Shepard’s office complaining of anterior chest wall pain. Unable to explain the continued expressions of pain by Bourque, Dr. Shepard requested another MRI. As previously found in the first MRI, the radiologist noted a compression fracture at T-7 and a central bulging disc in the inferi- or aspect of C-7 with extension in the spinal canal. He also noted a slight change in angulation of the T-Spine suggesting some evidence of nerve root compression. We are unable to determine definitively from the record whether the medical experts placed any significance on these additional findings.
However, Dr. Shepard found no change in the original fracture or collapse of the T-7 vertebrae. He assigned a ten percent (10%) whole body impairment rating to Bo-urque and restricted him from performing manual labor and heavy lifting. On August 2, 1990, Dr. Shepard signed a job analysis form releasing Bourque to work as a paddy machine operator.
Our task on appeal is made exceedingly difficult in the absence of any written or oral reasons for judgment in the record. Moreover, the hearing officer expressly withheld any determination of the employee’s continuing disability pending future medical evaluation by one of his treating physicians.
Ordinarily, an administrative officer’s findings of fact are reviewed on appeal under the same manifest error or clearly wrong standard applicable to trial judges. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); and Canter v. Koehring Company, 283 So.2d 716 (La.1973).
However, as evident in this case, where the officer neglects to make such fact findings in the record or legal error interdicts this fact finding process, the manifest error standard does not apply. Moore v. Clark, 517 So.2d 293 (La.App. 1st Cir.1987); Northern Assurance Co. of America v. Louisiana Power & Light Company, 561 So.2d 770 (La.App. 1st Cir.1990), reversed, 580 So.2d 351 (La.1991).
We conclude the hearing officer committed legal error in granting an award of benefits with penalties, interest, attorneys’ fees, and cost without first making a determination as to the continuing nature of the employee's disability. We are convinced the Louisiana Workers’ Compensation Act specifically requires a determination of continued disability at the time payments are stopped by the employer before any further awards or entitlement may be rendered and enforced.
LSA-R.S. 23:1221 provides compensation for any injury producing “temporary total disability,” “permanent total disability” and “permanent partial disability” for anatomical loss of use or amputation.
We are unable to find any language in this provision which would allow a finding of liability against the employer for weekly benefits without a commensurate finding of an existing work related disability associated with a back injury which prohibits or restricts the employee from performing his former job. Without squarely addressing this issue, appellee haphazardly referenced *672 this court to Virgil v. American Guarantee & Liability Insurance Co., 503 So.2d 45 (La.App. 5th Cir., 1987), reversed and remanded, 507 So.2d 825 (La.1987); on first remand, 512 So.2d 1235 (La.App. 5th Cir., 1987), writ granted and remanded for five (5) judge panel reargument, 514 So.2d 1169 (La.1987); and on second remand, 520 So.2d 1259 (La.App. 5th Cir., 1988), writ denied, 522 So.2d 569 (La.1988).
Apparently appellee cites this case as broad authority that “There need be no finding of disability in order to award benefits under the Act.” We are not persuaded to reach a similar conclusion from our analysis of the holding in Virgil.
The law applicable in this case provides once a worker is found to have a permanent total disability which prevents him from engaging in gainful employment of any nature, he is entitled to sixty-six and two-thirds percent (66%%) of wages during the period of such disability, LSA-R.S. 23:1221(2). A finding of partial permanent disability entitles the worker who is unable to earn ninety percent (90%) of his pre-injury income from any employment to a percentage of scheduled disability for a maximum of 510 weeks, LSA-R.S. 23:1221(3). A temporary total disability entitles the worker to a percentage of scheduled disability for the period of the disability. LSA-R.S. 23:1221(1).
The only exception to the requirement that a disability must be found to fall within the benefit protection of the Act is contained in LSA-R.S. 23:1221(4)(p). This section permits recovery for non-disabling residual physical impairment or disfigurement.
The majority opinion on second remand in Virgil favorably referred to a passage in the Malone and Johnson treatise, 13 W.S. Malone and H.A. Johnson, La. Civil Law Treatise: Workers’ Compensation Law and Practice, § 286 (1980) expressing:
“[LSA-R.S. 23:1221(4)(p) ] is an unusual provision ... It could be regarded as akin to a tort award within the Act, in an amount in the discretion of the court up to the specified maximum. The ‘permanent impairment’ language ... has come to be the more important of the two bases of recovery and serves as a catchall when the employee appears to be injured, but is neither disabled nor suffers from any injury to some member mentioned in the schedule of specific losses. This sub-section is difficult to square with the compensation principle, since it is not based upon loss of earning capacity even though no fault of the employer need be shown_” 512 So.2d 1235, 1239.
Although Virgil and Ventress v. Danel-Ryder, Inc., 225 So.2d 765 (La.App. 3rd Cir.1969), seemingly would permit recovery of benefits under LSA-R.S. 23:1221(4)(p) without a finding of employment disability for a back injury, we are not called upon in this case to fully explore the ambit of LSA-R.S. 23:1221(4)(p) and its applicability to nondisabling back injuries pre-dating its amendment in 1983.
The law applicable in a worker’s compensation case is the law in effect at the time of the injury. Olson Insurance Co. of State of Pa., 471 So.2d 1151 (La.App. 3rd Cir., 1985), writ denied, 476 So.2d 352 (La.1985). LSA-R.S. 23:1221(4)(p) was amended effective July 1, 1983 subsequent to the discussion in Virgil and rendition of our opinion in Ventress.
LSA-R.S. 23:1221(4)(p) now provides that before an employee may come within its auspices, the employee must either prove that he or she is “seriously and permanently disfigured,” has suffered “a permanent hearing loss solely due to a single traumatic accident,” or can demonstrate “the usefulness of the physical function of (his or her) respiratory system, as contained within (his or her) thoracic or abdominal cavities, is seriously and permanently impaired.”
The more restrictive language used in the amended section legislatively excludes claims for impairment of functions related to the back or neck. Our interpretation is buttressed by a similar conclusion made in the Malone and Johnson treatise, 13 W.S. Malone and H.A. Johnson, La. Civil Law Treatise: Workers’ Compensation Law and Practice, § 286 at 181 (1992 Supp.).
Consequently, for a back or neck injury to fall within the benefit protection of the *673 Act, a finding of employment disability must be made; and a hearing officer may not award disability benefits with an express reservation of any determination of the claimant’s employment limitation. Perhaps the hearing officer felt compelled to delay a determination of the nature and extent of Bourque’s disability to await evidence of an evaluation by a physician of his sole selection, particularly when reviewing the radiological findings. We suggest a better approach by the hearing officer would have been to keep the record open for presentment of additional evidence without prematurely rendering an award of benefit.
Having determined that Bourque’s award of disability benefits with an express reservation of any determination of his disability may not stand, we must further explore whether we as an appellate court may properly address the issues of Bo-urque’s disability and entitlement to benefits under LSA-R.S. 23:1221, or whether we must remand to let a hearing officer make that determination.
Louisiana Constitution (1974), Art. 5, § 10 (1992 Supp.) states that:
“Section 10. (A) Jurisdiction. Except as otherwise provided by this constitution, a court of appeal has appellate jurisdiction of (2) all civil matters, including direct review of administrative agency determinations in worker’s compensation matters as heretofore or hereafter provided by law, ...
(B) Scope of Review. Except as limited to questions of law by this constitution, or as provided by law in the review of administrative agency determinations, appellate jurisdiction of a court of appeal extends to law and facts. In the review-of an administrative agency determination in a worker’s compensation matter, a court of appeal may render judgment as provided by law, or in the interest of justice, remand the matter to the administrative agency for further proceedings
[[Image here]]
Louisiana Constitution (1974), Art. 5, Section 16 (1992 Supp.), states that:
“Section 16. (A) Original Jurisdiction. (1) Except as otherwise authorized by this constitution or except as heretofore or hereafter provided by law for administrative agency determinations in worker’s compensation matters, a district court shall have original jurisdiction of all civil and criminal matters ...”
LSA-R.S. 23:1310.3(A)(4) prior to its 1991 amendment, stated that:
“(4) The hearing officer shall be vested with original, exclusive jurisdiction over all claims filed pursuant to the Worker’s Compensation Act.”
LSA-R.S. 23:1310.3 now provides that:
“E. Except as otherwise provided by R.S. 23:1101(D) and 13778(E), the hearing officer shall be vested with original, exclusive jurisdiction over all claims or disputes arising out of this Chapter.”
We need not decide which version of the statute applies to the case because the exceptions in the 1991 amendment are inapplicable under the facts before us.
The above provisions make clear the legislature’s intent and the peoples’ desire that a hearing officer and not a trial judge (and thus presumably not an appellate court) is vested with “original, exclusive jurisdiction over all claims or disputes arising out of [the Workers’ Compensation Act].” Here, we are confronted by the absence of a determination rather than a determination whose correctness is at issue. We may not disregard the clear intention of the above provisions, and thus we must remand to the hearing officer for a determination of Bourque’s disability. Accordingly, this case is hereby remanded to the Louisiana Department of Labor, Office of Workers’ Compensation for a determination of whether Bourque was disabled such that he was entitled to disability benefits under LSA-R.S. 23:1221, from April 17, 1990 to August 2, 1990.
For the foregoing reasons the judgment of the Fourth District, Louisiana Office of Workers’ Compensation, is reversed.
REVERSED AND REMANDED.