643 So.2d 386 (1994)
Josie FRANCISCO, Plaintiff/Appellant,
v.
HARRIS MANAGEMENT COMPANY, d/b/a Colonial Nursing Home, Defendant/Appellee.
No. 94-136.
Court of Appeal of Louisiana, Third Circuit.
October 5, 1994.
Norris Joseph Greenhouse, Marksville, for Josie Francisco.
Anthony Reginelli Jr., New Orleans, for Colonial Nursing Home.
*387 Before YELVERTON and COOKS, JJ., and BERTRAND[*], J. Pro Tem.
LUCIEN C. BERTRAND, Jr., Judge Pro Tem.
Josie Francisco, a former nurse's aid, appeals the dismissal of her claim for worker's compensation benefits against Colonial Nursing Home. The hearing officer concluded that Francisco's accident, which occurred in her employer's parking lot approximately 15 minutes before her shift began, was not arising out of and in the course of her employment. For the following reasons, we reverse and remand.

FACTS
On July 5, 1991, at approximately 9:45 p.m., Francisco slipped and fell in Colonial's parking lot as she was walking toward the nursing home building to check in for the 10:00 p.m. shift. She testified that she did not know what caused her to fall; however, she remembered that afterward, she was covered with sand and her foot was caught between two concrete parking barriers that prevented her from arising without assistance. Francisco and several other employees present that night testified that the parking area was under construction and was very dark because the new lighting had not yet been installed.
Francisco was immediately transported by ambulance to Humana Hospital in Marksville where she was diagnosed as sustaining undisplaced fractures in her left elbow and knee, as well as swelling and tenderness in her left shoulder. Dr. Robert Po, the orthopedic surgeon who examined Francisco in the emergency room, continued to treat her for three months, releasing her to return to work on October 7, 1991. Dr. Po's course of treatment included physical therapy and home health care with the use of a walker and wheelchair. Although Dr. Po acknowledged that Francisco was not pain-free on the date of her release, he believed that her continued complaints could be adequately managed by a general practitioner. He also recommended that Francisco undergo a work-hardening program if she did not immediately return to work. Although Francisco did not return to work, this recommendation was not followed.
After Dr. Po released her, Francisco was seen by a general practitioner, Dr. Bryan McCann, on a frequent basis from January of 1992 through March of 1993. Francisco's complaints included tenderness and problems with her knee "giving out," for which Dr. McCann prescribed cortisone injections and anti-inflammatory medication. On March 3, 1993, the date of his deposition, Dr. McCann stated that Francisco was at maximum medical improvement but would still need cortisone injections and medication for her pain and swelling. Dr. McCann believed that Francisco was capable of only sedentary employment, but he also stated that he would defer to an orthopedist for a disability rating. Both Drs. Po and McCann stressed that Francisco's weightwhich at times reached 350 poundscontributed to her inability to achieve pain-free status.
Over one year after the accident, on October 28, 1992, Francisco was examined by Dr. William Smith. An MRI ordered by Dr. Smith revealed a chronic tear of the left cruciate ligament, prompting Dr. Smith to assign a 20% physical impairment of the left knee joint. However, the record does not contain any opinion by Dr. Smith as to the cause of this pathology.
Colonial paid Francisco temporary total disability benefits from the date of the accident, July 5, 1991, through January 27, 1992. The instant suit for reinstatement of benefits was filed on May 13, 1992. Colonial responded by filing a motion for summary judgment, denying that Francisco's accident was compensable because it occurred before her shift began and while she was not performing any duties of her employment. The hearing officer deferred ruling on Colonial's motion until after trial on the merits. After taking the matter under advisement, the hearing officer rendered judgment dismissing Francisco's *388 claim for the reasons assigned in Colonial's motion for summary judgment.

EMPLOYMENT RISK
An employer is responsible for compensation benefits to an employee who is injured by an accident "arising out of" and "in the course of" his employment. La.R.S. 23:1031 A. An accident "arises out of" employment if the risk from which the injury resulted was greater for the employee than for a person not engaged in employment. Mundy v. Department of Health and Human Resources, 593 So.2d 346 (La.1992). The term "in the course of" brings into focus the time and place relationship between the risk and the employment. Raybol v. Louisiana State University, 520 So.2d 724 (La. 1988). The two requirements cannot be considered in isolation from each other. A strong showing by the claimant with reference to the "arising out of" requirement may compensate for a relatively weak showing on the "in the course of" requirement, or vice versa. Raybol, at p. 726.
The hearing officer relied on Mundy, supra, to conclude that Francisco's accident was not compensable. In Mundy, the plaintiff was violently assaulted in an elevator on her employer's premises before she checked in for her evening nursing shift. The Supreme Court found that these facts presented a weak "course of employment" showing because the plaintiff had not yet reached her designated work station nor had she begun to perform any of her employment duties. As to the "arising out of" requirement, the Court characterized the risk of a random, violent attack as neutral because it was not related either to the plaintiff's employment or to her personal life. Applying the dual requirement analysis of Raybol, the Court concluded that the neutral "arising out of" risk did not compensate for the relatively weak "in the course of" showing. Hence, Mundy's accident was not covered by the compensation act, and she was permitted to maintain a tort action against her employer.
Although Mundy contains some similarities to the instant case, we nonetheless find it distinguishable. Specifically, we do not consider the risk that Francisco encountered in her employer's parking lot to be neutral, i.e. unrelated to her employment. As an employee of Colonial, Francisco encountered any hazardous or defective conditions that may have been present in its parking lot more frequently and to a greater extent than the general public. Her heightened exposure was solely due to her employment. As the Fourth Circuit stated in Bosse v. Westinghouse Electric, Inc., No. 93-1898 (La.App. 4th Cir., 5/17/94); 637 So.2d 1157 [application for writs filed on June 20, 1994]:
A physical defect in the premises of the employer is very different from an independent, random act of violence committed by an unrelated third party stranger. A random act of violence could occur anywhere, but a defect in the premises at the place of employment is "peculiar and distinctive" to that location. See Templet v. Intracoastal Truck Line, Inc., 255 La. 193, 230 So.2d 74 (1969), cited with approval in Mundy, supra, 593 So.2d at 350.
Bosse, at p. 1159.
The plaintiff in Bosse was injured as he stepped from a misleveled elevator on his employer's premises approximately 45 minutes before his work shift began. The Fourth Circuit held that the risk posed by the elevator was "arising out of" the plaintiff's employment because of his exposure to it on a daily basis, notwithstanding the fact that the elevator also posed a risk to the general public. This analysis is consistent with prior jurisprudence. See, for example, Serean v. Kaiser Aluminum & Chemical Corporation, 277 So.2d 732 (La.App. 4th Cir. 1973), where the claimant was awarded compensation for an injury which occurred as he tripped over a bottle in the employer's parking lot 45 minutes before his morning shift began; Carter v. Lanzetta, 249 La. 1098, 193 So.2d 259 (1966), where the employee fell on a step at the employer's front door after remaining for 20 or 30 minutes after the end of his shift; and Carter v. Winn Dixie Louisiana, Inc., 517 So.2d 504 (La. App. 4th Cir.1987), writ denied, 520 So.2d 755 (La.1988), where the employee's exclusive remedy was held to be worker's compensation for a slip and fall on some water on the *389 work premises shortly after her shift had ended.
We find that the facts presented in the instant case are more akin to those of Bosse and the above jurisprudence than to those of Mundy. Accordingly, the judgment rendered in favor of the defendant on this issue is reversed.

REMAND
Because the hearing officer deferred ruling on Colonial's motion for summary judgment, the parties proceeded to trial on the merits. The trial record consisted of the plaintiff's testimony, the depositions of Drs. Po and McCann and other medical records. However, the hearing officer made no findings as to Francisco's disability. Under these circumstances, we find that a remand is appropriate, even though the record contains sufficient evidence for a ruling at least on the question of temporary total disability.
La. Const. (1974) art. V, § 10 provides in part:
(B) Scope of Review. Except as limited to questions of law by this constitution, or as provided by law in the review of administrative agency determinations, appellate jurisdiction of a court of appeal extends to law and facts. In the review of an administrative agency determination in a worker's compensation matter, a court of appeal may render judgment as provided by law, or, in the interest of justice, remand the matter to the administrative agency for further proceedings. In criminal cases its appellate jurisdiction extends only to questions of law. (Emphasis added.)
See also Bourque v. Riviana Foods, Inc.,[1] 611 So.2d 669 (La.App. 3d Cir.1992). Accordingly, the case is remanded for a determination of whether Francisco is entitled to any disability benefits or any other relief under the Louisiana Worker's Compensation Act. The hearing officer may permit the parties to supplement the record if she deems additional evidence is necessary to render a decision in this case.
For the above reasons, the judgment of the Office of Worker's Compensation is reversed, and the case is remanded for further proceedings not inconsistent with this opinion. Costs of this appeal are assessed to defendant-appellant, Harris Management Co., d/b/a Colonial Nursing Home.
REVERSED AND REMANDED.
NOTES
[*] Judge Lucien C. Bertrand, Jr., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] The author of this opinion writes separately to disagree with Bourque, supra, insofar as that decision would compel an appellate court to remand any worker's compensation case in which the hearing officer failed to address all issues before the court. In the event of a trial court error, appellate courts have always had the authority to conduct a de novo review of the record and to render a judgment on the merits, if the record before it is complete. Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975); La.C.C.P. art. 2164. I do not find that the amendments to the Louisiana Constitution and to La.R.S. 23:1310, which divest the trial courts of jurisdiction in worker's compensation cases, alter this principle of appellate review. However, I believe that a remand is appropriate in this case because the record appears to be inadequate to render a decision on the question of supplemental earnings benefits. See Cloud v. Cajun Contractors & Engineers, Inc., 517 So.2d 1010 (La.App. 3d Cir. 1987) and Austin v. Howard Discount Stores, Inc., 569 So.2d 659 (La.App. 2d Cir.1990).