653 So.2d 202 (1995)
Bobbie J. MITCHELL, Plaintiff-Appellant,
v.
BROOKSHIRE GROCERY COMPANY, Defendant-Appellee.
No. 26755-CA.
Court of Appeal of Louisiana, Second Circuit.
April 5, 1995.
Writ Denied June 16, 1995.
*203 Donald Brown, Monroe, for appellant.
Kim Purdy, Shreveport, for appellee.
Hudson, Potts and Bernstein by Brian P. Bowes, Monroe, for intervenor.
Before MARVIN, C.J., WILLIAMS, J., and CULPEPPER, J. Pro Tem.
WILLIAMS, Judge.
The plaintiff, Bobbie J. Mitchell, appeals the dismissal of her claim for worker's compensation benefits. The hearing officer found the plaintiff failed to prove by the preponderance of the evidence that the accident occurred in the course of and arose out of her employment with the defendant, Brookshire Grocery Company ("Brookshire"). Mitchell appeals. We reverse and remand.

FACTS
The plaintiff was employed by Brookshire as a cashier. On the day of the accident, in December 1991, Mitchell completed her shift, clocked out and then proceeded to make a purchase from the store. After completing her purchase, Mitchell was accompanied out of the store by a stock clerk, Greg Frost, who carried her grocery bag. While walking to her car, Mitchell fell in a pothole in Brookshire's parking lot, suffering serious injuries. She and Frost immediately went back into the store and reported the accident to Brookshire's assistant manager, Mike Perot. Apparently, however, an accident report was not completed until some months later, by a different assistant manager.
Mitchell reported to work three days later, on her next scheduled workday. She continued her employment with Brookshire in spite of frequent pain. Mitchell testified that the pain in her neck and shoulders became progressively worse. In July 1992, she stopped working because of the pain and her doctor's recommendation that she have surgery. Mitchell underwent surgery on her neck and upper back in August 1992.[1] Following surgery, she had three to four months of physical therapy. Mitchell testified that she continues to have the neck and shoulder pain, particularly when using her arms and hands. In addition, she stated that although a pinched nerve in her left arm was relieved by the surgery, she now has trouble with weakness in that arm.
Mitchell filed suit for worker's compensation benefits. After a trial on the merits, the hearing officer dismissed her claim for benefits against her employer, Brookshire. This appeal ensued.

DISCUSSION
Mitchell argues that the hearing officer erred in finding that the accident did not occur in the course of and arise out of her employment with Brookshire and in failing to award her worker's compensation benefits and medical expenses.
To prevail in a claim for worker's compensation benefits, the claimant must establish that he or she suffered personal injury by accident "arising out of and in the course of" his or her employment. LSA-R.S. § 23:1031. Both arising out of and in the course of employment must be proven to qualify for worker's compensation benefits; however, they should not be considered in isolation, and a strong showing of one can overcome or strengthen a weaker showing of the other. Duncan v. South Central Bell Telephone Co., 608 So.2d 649 (La.App. 2d Cir.1992), writ denied, 610 So.2d 800 (La. 1993). The worker's compensation act is to be liberally construed in favor of the injured employee. Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52 (La.1993); La-Prarie v. Pony Express Courier, 628 So.2d 192 (La.App. 2d Cir.1993), writ denied, 94-0014 (La. 02/25/94), 632 So.2d 765.
The principal criteria for determining course of employment are time, place and *204 activity. Mundy v. Dept. of Health & Human Resources, 593 So.2d 346 (La.1992). Even if an employee has finished his day's work and is in the act of leaving, he is entitled to a reasonable period while still on the employer's premises which is regarded as within the course of employment; the working day embraces these intervals just as it embraces reasonable periods of rest, relaxation, and attendance to personal needs. Duncan, supra, citing Duncan v. South Central Bell Telephone Co., 554 So.2d 214 (La. App. 2d Cir.1989), writ denied, 559 So.2d 125 (La.1990); Carter v. Lanzetta, 249 La. 1098, 193 So.2d 259 (1966).
The determination of whether an accident arises out of employment focuses on the character or source of the risk which gives rise to the injury and on the relationship of the risk to the nature of the employment. Mundy, supra. An accident has been held to arise out of employment if the conditions or obligations of the employment caused the employee in the course of employment to be at the place of the accident at the time the accident occurred. Mundy, supra. When an employee is squarely within the course of his employment, virtually any risk has been considered as arising out of employment. But, when the accident occurs at a time or place or during an activity such that the employee is barely within the outer boundary of the course of employment, a very strong showing by the employee that the risk arose out of the employment is necessary. Mundy, supra.
Mundy involved a tort action by a nurse against her employer for damages sustained when she was stabbed by an assailant in the hospital elevator while she was en route to report for her shift at her work station on an upper floor. The employer sought tort immunity under the Worker's Compensation Act. The Louisiana Supreme Court held that under an analysis of the course of employment and arising out of employment requirements of the Act, in light of the facts of the case, the employer failed to prove its entitlement to immunity.
The Mundy court, in assessing the arising out of employment requirement, found that the risk which gave rise to the injury was not greater for the nurse than for a person not so employed. Reasoning that the risk which gave rise to her injury was a neutral risk that was related neither to her employment nor to her personal life, the Court indicated that the arising out of employment showing by the employer, while not particularly strong, could be considered sufficient if there were a strong course of employment showing. Noting that the attack occurred before the employee arrived at her work station and began her shift under the supervision and control of her employer, and that the attack occurred in an elevator used by patients and visitors as well as employees, the Mundy Court found there was not a strong course of employment showing. The Court concluded that because the neutral nature of the risk from which the injury arose required a strong showing of course of employment, and because the evidence relative to time, place and employment activity provided only a relatively weak showing, the employer failed to meet its burden of proving entitlement to tort immunity.
In the instant case, the hearing officer apparently read Mundy as a retreat from the liberal interpretation our courts have historically given the arising out of and in the course of employment requirements in the Worker's Compensation Act. Relying on Mundy, the hearing officer reasoned that the risk of falling in Brookshire's parking lot was neutral in character, i.e., not greater for Mitchell than for any Brookshire patron and not particularly associated with Mitchell's employment; thus, a strong showing of course of employment would be required. Finding that Mitchell had clocked out and done some personal shopping, that she was not in her assigned work area but in an area used by both employees and patrons, and that she was no longer within the control or supervision of her employer, the hearing officer reasoned that there had been no strong course of employment showing. Thus, the hearing officer concluded that Mitchell's accident was not compensable.
We read Mundy more narrowly and find Mundy readily distinguishable from the instant case. We do not consider the risk that Mitchell encountered in Brookshire's parking *205 lot to be neutral, i.e., unrelated to her employment. As a Brookshire employee, Mitchell encountered any hazardous or defective conditions that may have been present in Brookshire's parking lot more frequently than the general public or even Brookshire patrons. Her heightened exposure was due solely to her employment. Francisco v. Harris Management Co., 94-136 (La.App. 3d Cir. 10/05/94), 643 So.2d 386. A physical defect in the premises of the employer, as was the pothole in Brookshire's parking lot, is very different from an independent, random act of violence by an unknown third party, as was the case in Mundy. While a random act of violence could occur anywhere, a defect in the premises at the place of employment is peculiar and distinctive to that location. Bosse v. Westinghouse Electric, Inc., 93-1898 (La.App. 4th Cir. 05/17/94), 637 So.2d 1157, writ denied, 94-1623 (La. 09/30/94), 642 So.2d 878.
Here, the risk was intrinsic to Mitchell's place of employment. As an employee at that location, Mitchell must be presumed to encounter the risk to a greater extent or frequency than the general public, even than regular Brookshire patrons. Bosse, supra. Thus, Mitchell had a greater probability of sustaining the injury posed by the work place risk because her employment required her to be exposed to that risk to a greater frequency than one not so employed. Although a member of the general public could have fallen in the pothole, such a person would not be compelled by reason of his employment to expose himself to the risk posed by the pothole in the Brookshire parking lot to the same extent and frequency as required of Mitchell on a daily basis.
The record indicates that Mitchell clocked out and purchased milk and perhaps another item or so before leaving the store. However, it is not clear from the record exactly how much time lapsed between her clocking out and the accident or exactly what time of day the accident occurred. Frost testified that Mitchell fell in the Brookshire parking lot approximately five feet from the sidewalk "just right at dark." Mitchell testified, as did Frost, that it was Brookshire's policy to escort female employees to their cars when it was dark and that is why Frost accompanied her. Thus, in looking at the time, place, and activity at the time of the accident, we note that it was after Mitchell's shift ended, she was still on the employer's premises, and she was walking to her car to go home.
Our jurisprudence had been inclined toward coverage of injuries on the employer's premises within a reasonable time after the completion of the employee's work day. Furthermore, our courts have shown deference to employees who remain on the employer's premises for a short period of time after the end of their work day to make personal purchases. Malone & Johnson, 13 Louisiana Civil Law Treatise 3rd Ed. Workers' Compensation Law and Practice, § 167 (1994). See, for example, Bates v. Gulf States Utilities Co., 249 La. 1087, 193 So.2d 255 (1966) (employee who parked auto in employee parking area was within scope and course of employment when, after day's work, he discovered flat tire and took tire, without permission, into employer's garage to inflate it and was injured); Carter, supra, (accident when employee fell on step adjoining employer's front door as she was leaving after work, occurred during the course of employment, although employee had lingered twenty to thirty minutes after work socializing with employer); Tuminello v. Willis Knighton Medical Center, 597 So.2d 1089 (La.App. 2d Cir.1992), writ denied, 600 So.2d 684 (La.1992) (injuries incurred when employee stepped into hole in parking lot on employer's premises fifteen minutes after she left work and while returning from employer-sponsored picnic arose from and in course of employment); Lachney v. Riddle, 577 So.2d 173 (La.App. 1st Cir.1991), writ denied, 578 So.2d 914 (La.1991) (accident which occurred on road on penitentiary premises as employee was in the act of leaving work arose out of and in the course of employment); Livings v. Reliance Insurance Co., 525 So.2d 620 (La. App. 3rd Cir.1988), writ not considered, 530 So.2d 557 (La.1988) (employee who was fired, lingered long enough to collect personal belongings, and slipped and fell on employer's premises as she was in the process of leaving was in the course of employment); Glory v. Zuppardo's Economical Supermarket, Inc., 532 So.2d 933 (La.App. 5th Cir.1988) (injury *206 which occurred when employee fell on stairs on employer's premises while going to get paycheck after clocking out for lunch arose out of and in the course of employment); Carter v. Winn Dixie Louisiana, Inc., 517 So.2d 504 (La.App. 4th Cir.1988), writ denied, 520 So.2d 755 (La.1988) (worker's compensation was exclusive remedy for employee injured several minutes after clocking out when she went to produce aisle to look for "special buys" and slipped in water on employer's floor); Edwards v. Superior Coach Sales, Inc., 417 So.2d 1289 (La.App. 1st Cir. 1982), writ denied, 422 So.2d 423 (La.1982) (welding accident while using employer's equipment, with permission but on personal project, after finishing work arose out of and in the course of employment); Huett v. Insurance Co. of North America, 329 So.2d 222 (La.App. 4th Cir.1976), writ denied, 332 So.2d 863 (La.1976) (cashier injured when she fell on broken sidewalk on employer's premises as she was leaving store to go home for lunch was entitled to coverage under worker's compensation act); and, Simmons v. Liberty Mutual Insurance Co., 185 So.2d 822 (La.App. 3rd Cir.1966) (compensation was awarded to sales clerk who finished work at 1:00 p.m., returned to store to pick up paycheck at 4:30 p.m., and was injured in a fall while leaving store at 5:00 p.m., after stopping en route out of store to pick up personal articles previously selected and held for her).
We view the facts of the instant case as much more akin to those of the jurisprudence cited above than to those of Mundy. We find, after a review of the record in its entirety, that Mitchell has made a more than adequate showing that her accident arose out of and in the course of her employment with Brookshire. Accordingly, the judgment of the hearing officer dismissing Mitchell's claim is reversed.
Although the hearing officer's opinion on the merits indicates that Mitchell suffered serious injuries when she fell, the hearing officer made no findings as to Mitchell's disability. In this regard, we are not confronted with a determination to be reviewed for correctness, but the absence of a determination. LSA-R.S. 23:1310.3 provides that a hearing officer is vested with "original, exclusive jurisdiction over all claims or disputes" arising out of the Worker's Compensation Act. Accordingly, we find it appropriate to remand the case for a determination regarding Mitchell's disability. The hearing officer may permit the parties to supplement the record if she deems additional evidence is necessary to render a decision in this case. Francisco, supra; Bourque v. Riviana Foods, Inc., 611 So.2d 669 (La.App. 3rd Cir. 1992).

CONCLUSION
For the foregoing reasons, the judgment is reversed and the case is remanded for further proceedings consistent with this opinion and in accordance with law. Costs of this appeal are assessed to the defendant, Brookshire Grocery Company.
REVERSED AND REMANDED.
NOTES
[1] The operative report indicates the procedures performed were: decompressive cervical laminectomy of C4, C5, C6 and C7 and bilateral foraminotomies of C4-5, C5-6 and C6-7. Mitchell's diagnosis is cervical spinal stenosis.