BROWN, Chief Judge.
11 Claimant, Sheila Maxwell, was working as a caregiver for defendant, Care Solutions, Inc. At approximately 10 p.m., she left a client at the Glenwood Regional Medical Center - (“Glenwood”) in West Monroe, Louisiana, and walked to her car in' the hospital parking lot where she was assaulted and severely beaten by an unknown assailant. She filed a disputed claim for workers’ compensation. The workers’- compensation judge (“WCJ”) found that: a compensable accident had occurred and that claimant was entitled to medical benefits; the employer had no reasonable basis to controvert or deny the claim; an award of penalties and attorney fees was áppropriate; yet,'due to a lack of an expert opinion showing that claimant *654 was unable to work, she was not entitled to an award of temporary total disability (“TTD”) benefits.' Claimant filed a motion to modify the judgment/grant a new trial, which was denied. Defendant, Care Solutions, Inc., has appealed from the WCJ’s judgment, and claimant, Sheila Maxwell, has answered the appeal as to the denial of TTD benefits; For the reasons set forth below, we affirm the WCJ’s order in clairri-ant’s favor. We reverse the denial of TTD benefits, and remand for further proceedings.

Facts and Procedural Background

On January 22, 2014, claimant, Sheila Maxwell, was working as a caregiver for defendant, Care Solutions, Inc. Her job entailed assisting aged or disabled persons in household living activities such as taking baths, cooking, going to the bathroom, dressing and undressing, and light housekeeping. On that date, claimant worked her usual hours, which were 8:00 a.m. to 5:00 p.m. Shortly after 5:00 p.m., as claimant was readying to [ aleave her client’s home, he complained of chest pains and breathing problems. According to the protocol issued by defendant, Ms. Maxwell was.required to call a Care Solutions nurse for, instructions. Claimant was directed to call 911, .which she did, and to accompany the client to.the hospital and remain with him .until he was either admitted or released.
As her client was transported to the Glenwood Emergency Room, Ms. Maxwell followed in her personal vehicle. They arrived around 5:30 p.m., but the decision to admit the client wasn’t made until approximately 10:00 p.m. As claimant was preparing to leave, the client asked her to take his medicine and clothing to his house and to tell his wife about his admission to the hospital. Ms. Maxwell took the items with her, intending to drop by the client’s house on her way home.
■ Claimant walked to her car in the hospital’s parking'lot, and as she opened the door to gét inside, an unknown black male accosted her, sliding into the vehicle next to her on the driver’s seat. He told Ms. Maxwell that he had just been released from jail and wanted her to take him somewhere. Claimant refused and tried to push her assailant from her car. The man then struck Ms. Maxwell several times in the face with a hard object. Her screams apparently scared him away, and Ms. Maxwell watched him leave the scene before she walked back to the hospital’s emergency room to seek treatment for her injuries. Claimant’s injuries included crushed and fractured facial bones under her eye, a broken nose, a laceration from her nose to her mouth, arid a dislocated cheekbone. Ms. Maxwell reported the incident to Care Solutions the next morning. A company nurse came to 1 ¡¡claimant’s home, took her picture to document her injuries, and retrieved the client’s medications.
Ms. Maxwell has not worked since the incident on January .22, 2014. She filed a disputed claim for compensation on February 6, 2014, asserting that her employer, Care Solutions, refused to provide or authorize workers’ compensation medical and indemnity benefits. She also indicated her choice of physician and sought, in addition to medical and indemnity benefits, an award of penalties and attorney fees. Defendant filed an answer on March 12, 2014, admitting that claimant had sustained an injury, and that she was employed with Care Solutions at the time of her injury. However, defendant denied, inter alia, that Ms. Maxwell was performing services arising out of and in the course of her employment at the time of the incident.
Because she was not financially able to obtain medical treatment, on March 19, 2014, almost two months after her injuries were sustained, Ms. Maxwell filed a motion *655 for treatment by her choice of physicians. Thereafter, defendant was ordered to provide/authorize evaluation (not continuing treatment) by two of the requested doctors, a general practitioner, and an ear, nose ánd throat specialist. '■
At the hearing on September 3, 2014, Ms. Maxwell testified that no' indemnity benefits had been paid.to her, and that, other than'the initial evaluations ordered by the WCJ, defendant had provided or authorized no medical benefits. As noted above, the WCJ' found' that claimant was injured in the course and arising out of her employment, but because there was no 14expert medical testimony -or records to indicate her inability to work, no'irldemnity benefits were allowed. Defendant was ordered to provide and pay for all reasonable and necessary medical treatment required for Ms. Maxwell’s work-related injuries and to reimburse her for medical expenses associated with her initial care at the Glen-wood Regional Medical Center and court-ordered evaluations. The- WCJ also assessed penalties in the amount of $2,000 and awarded claimant attorney fees in the amount of $8,000 for defendant’s failure to provide medical benefits. After -this, judgment, claimant went back to her -doctor and obtained an opinion that she was dis-' abled; she attachéd' this opinion to her motion for' new trial and modification. The motion for new trial/and or modification filed by claimant was denied, defendant took a' suspensive appeal and claimant answered, seeking review Of the denial of her request for TTD benefits.

Discussion

Entitlement to Workers’ Compensation Benefits ,

Defendant, Care Solutions, ■ claims that Ms. Maxwell was a “volunteer” when she went with her client to the‘hospital because her shift.had ended before the client started having the medical problems that precipitated his hospitalization and, even if claimant’s duties did require her to attend to her client after her shift ended, Ms. Maxwell was “off the clock” once her client was admitted to the hospital. Therefore, her injuries, which occurred in the hospital’s parking lot as she was leaving the premises, were not sustained in the course of her employment nor did they arise out of her employment.
|sTo establish entitlement to workers’ compensation benefits, the claimant must show that she sustained a personal injury by an accident arising out of and in the course of her employment. La. R.S. 23:1031(A); Buxton v. Iowa Police Dept., 09-0520 (La.10/20/09), 23 So.3d 275; Wilson v. General Motors Corp., 45,232 (La.App.2d Cir.05/26/10), 37 So.3d 602. The two requirements of arising out of employment -and in the course of employment are separate but mutually interdependent concepts used, to determine whether the inquiry is sufficiently related to the employment to warrant coverage under the system of workers’ compensation. Mundy v. Dept. of Health and Hitman Resources, 593 So.2d 346 (La.1992). However, these requirements should not be considered in isolation, and a strong showing of one can overcome or strengthen a weaker showing of the other. Mitchell v. Brookshire Grocery Co., 26,755 (La.App.2d Cir.04/05/95), 653 So.2d 202, writ denied, 95-1115 (La.06/16/95), 655 So.2d 339; Duncan v. South Central Bell Telephone Co., 608 So.2d 649 (La.App. 2d Cir.1992), writ denied, 610 So.2d 800 (La.1993).

In the Course of Employment

An accident occurs in the course of employment when the employee sustains an injury while actively engaged in the performance of her duties during *656 working hours, either on the employer’s premises or at other places where employ-ment activities take the employee. Mundy, supra. The-principal criteria for determining course of employment are time, place and activity. Id.; Mitchell, supra. “In the .course of’ brings into focus where the employee was and what she was doing at the.,moment of her injury. Wilson, supra; Wells v. Higginbotham, 43,472 (La.App.2d Cir.08/13/08), 989 So.2d 848, writ denied, 08-2425 (La.12/12/08), 996 So.2d 1121. Even if an employee has finished her day’s work and is-in the act of leaving, she is entitled to a reasonable period while still on the employer’s premises, or at other places where employment activities have taken the employee, which is regarded within the- course of employment. Mitchell, supra; Duncan, supra.
In Jackson v. Lawler, 273 So.2d 856, 858-59 (La.App. 2d Cir.1973), the plaintiff was injured while helping his employer move horses; the work the men had -been engaged-in ¡required that the horses-be moved from the lot in which they- "were normally kept to another one for the duration of the work; The lower court found that the plaintiff, who-was employed as a common laborer by defendant, was not in the course and scope of his employment at the time of his injury because he was not injured during his typical work duties, but while “accommodating” a request by his employer that he assist with moving the horses back to their lot as they were-leaving the property, This Court wrote:
We are of the opinion that the trial court erred in finding that plaintiff was not within the course and scope of his employment at the time of his injury. Through his own testimony and that of the defendant, it is made very clear that -plaintiff undertook to aid-in moving the horses at the instruction of his employer.. The Supreme Court has held that when an employee is injured while performing. work at the instruction of his employer,’ the employer cannot deny that the injury occurred during the course and scope -of the employment.
Contrary to defendant’s; assertion that claimant “volunteered” to go with her client to the hospital and as such, her injuries are not covered by workers’ compensation, the evidence is uncontroverted that Ms. Maxwell went to attend to her client at Glenwood Medical Qenter at the direction of 17her employer, Care Solutions, Defendant’s request that Ms. Maxwell accompany her client to the hospital and remain until he was hospitalized. or released could also, be considered as a “special mission.”. As acknowledged by the Louisiana Supreme-Court in McLin v. Industrial Specialty Contractors, Inc., 02-1539 (La.07/02/03), 851 So.2d 1135, the “special mission” exception to the “going and coming” rule .provides that if . an employee is found to be on a special-mission, she will be considered to be within the course of her employment from “portal to portal,” or in other words, from her home to the location of the mission, or alternatively, from the location of the mission to her home. ■ - -
Ms. Maxwell was on the hospital’s premises specifically engaged in duties (or having just completed them) under instructions fromt a nurse on defendant’s staff. Furthermore, it.is irrelevant that claimant may have been finishing her shift or even “off the clock” when she went to the hospital with her client. The critical fact is that she did so because she was instructed to do so by a staff member of Care Solutions. Further following her instructions, as soon as the client Ms. Maxwell had been caring for that day had been admitted to the hospital, claimant left him, and it was as she was walking to her vehicle in the hospital parking lot that she was the victim of *657 a vicious attack by an unknown assailant, Unquestionably, claimant was in the course of her employment with defendant when she sustained her injuries.-
IsArising out of Employment .
The determination of Whether an accident arises out of employment focuses on the character or source of the risk which gives rise to the injury and on thé relationship of the risk to the nature of the emplojment. Mundy-, supra; Mitchell, supra. The principal objective of the “arising out of’ employment requirement statute- is to separate accidents, attributable to employment risks, which form the basis of the employer’s obligation under the compensation system, from accidents attributable to personal risks, for which the employer should normally not be responsible. Mundy, supra; Wells, supra.
Defendant claims ■ that La. . R.S. 23;1031(E) applies in this case. . La. R.S. 23:1031(E) provides that: .
An injury by accident should not.be considered as having arisen out of the employment and thereby not covered by the provisions of this Chapter if the employer can establish that the injury arose out of a dispute with another person or employee over matters unrelated to the injured employee’s employment.
This statute clearly puts the burden of proving, that an injury arose out of a non-work related dispute on. the employer. Construing “dispute,” as that word is used in La. R.S. 23:1031(E), to include one-sided violent attacks by third parties -against employees when such an interpretation, is not definitively indicated by the language, of the statute would, not be in accord with a liberal interpretation in favor of the injured employee. Rather, the word “dispute” generally connotes a debate, quarrel, or fight which, logically,-' requires active participation by both the employee and the third party. It' is through active participation in the “dispute” that the employee |flincreases his risk of assault at work and, under such limited circumstances, the employer should be entitled' to immunity under the statute. However, a “dispute” does not include unilateral attacks by an. aggressor against a passive victim. Moreover,^ “dispute,”,as that word is used in the statute, does not include the mere existence- of a legal controversy, like a divorce,- between the employee and the third party. Guillory v. Interstate Gas Station, 94-1767 (La.03/30/95), 653 So.2d 1152, 1158 (Johnson, J., dissenting). As held by the court in Mundy, supra, an accident arises out of employment-if the conditions' or obligations of the employment caused the employee in the course of her employment to' be at the place of the accident at the time the- accident happened. When an employee is squarely within the course of her employment, virtually any risk has been, considered .as arising out .of employment. Id.; Wells.
In the instant case; claimant was attacked by a stranger after 10:00 p.ni. as she Was walking to her car in the hospital parking lot. Ms. Maxwell, whose, normal work day is from 8:00 a.m. to 5:00 p.m., and whoSe work location is the home of the particular client she is assigned to on any given day, Would not have been in the parking lot óf the' Gldhwood Regional Medical Center at that time on that date but for the specific instructions of her employer. As directed, claimant accompanied her client to the hospital and remained with him until he was admitted around 10:00 p.m.,' at Which time she' gathered her things, together with medication and clothing the client asked her to take to his wife, and began; walking to her vehicle. Her injuries, sustained- in a violent assault by a stranger as she was leaving the Inhospital to go: home, clearly arose out of her employment with defendant. • The WCJ did *658 not err in finding that claimant’s accident was covered by workers’ compensation. ■

Penalties and Attorney Fees

Defendant contends that, under the facts and' circumstances of this case, the WCJ’s award of penalties' and attorney fees are neither warranted nor supported.
The determination of whether an employer or insurer should be cast with penalties and attorney fees in a workers’ compensation action is essentially a question of fact subject to the manifest error/clearly wrong standard of review. Authement v. Shappert Engineering, 02-1631 (La.02/25/03), 840 So.2d 1181; O’Quinn v. Trinidad Drilling, LP, 49,372 (La.App.2d Cir.10/01/14), 150 So.3d 486; Rainwater v. Tango Transport, 45,041 (La.App.2d Cir.03/10/10), 32 So.3d 1174.
As stated by the supreme court in Authement, supra at 1186-87:
One purpose of the workers’ compensation statute is to promptly provide compensation and medical benefits to an employee who suffers injury within the course and scope of employment. The employer is obligated to “furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws, of this state as legal.” La. R.S. 23:1203(A). Thus, we conclude that a failure to authorize treatment can result.in the imposition of penalties and attorney fees except when the claim is reasonably controverted. Depending on the circumstances, a failure to authorize treatment is effectively a failure to furnish treatment.
In order to reasonably controvert a claim, a defendant must prove that there was a reasonable basis for its denial of benefits. The critical inquiry in determining whether to impose penalties and. attorney fees is whether the |u employer had an articulable and objective reason to deny benefits. Authement, supra; Williams v. Rush Masonry, Inc., 98-2271 (La.06/29/99), 737 So.2d 41. Reasonably controverting a claim means that the employer or insurer has sufficient factual and medical information to reasonably counter that provided by. the claimant. Massey v. Fresenius Medical Care Holding, 49,407 (La.App.2d Cir.11/19/14), 152 So.3d 1019, writ denied, 14-2650 (La.03/16/15), 160 So.3d 1290.
The following is taken from the WCJ’s oral reasons for judgment:
I also find that the Court did not hear a reasonable basis for the defendants to deny this claim. No reasonable basis was presented as evidence to this Court as to why this claim was denied. Evidence indicates there was no investigation [by defendant]. There was no inquiry concerning the medications and clothing [of the client] that [claimant] had. ‘
Apparently defendant’s primary reason for denying benefits to claimant was the fact that its reimbursement from Medicaid stopped upon the client’s admission to the hospital, an issue of federal law and one which has absolutely no relation to or bearing on the issue of whether Ms. Maxwell’s injuries arose out of and during the course of her employment such that defendant’s workers’ compensation obligation under state law was triggered. We find no error in' the WCJ’s determination that defendant did not have sufficient factual or medical information upon which to base its denial of benefits to claimant and therefore, no error in the imposition of penalties and attorney fees.

WCJ’s Denial of Indemnity Benefits

The WCJ did not award any -TTD benefits to claimant because “the Court was *659 unable to find any medical [opinion] showing that the claimant is 1^unable to work,, that she is temporarily and'■totally disabled.” Claimant’s attorney argued that because Ms. Maxwell was denied medical benefits by her employer, other than the court-ordered evaluations, the doctors were denied ‘treatment and diagnostic options and were therefore unable or unwilling to make a determination as to claimant’s ability to work. Nonetheless, the WCJ denied Ms. Maxwell’s claim for disability on the basis of a lack of medical evidence.
Thereafter, a motion for modification/new trial filed by claimant’s attorney was filed. Attached thereto was a copy of a disability report prepared by Dr. Coleman after the WCJ’s judgment ordering that medical benefits be paid by defendant. In this report, Dr. Coleman opined that Ms. Maxwell’s disability began on the date of the.injury and was ongoing., Claimant’s motion was denied, by the WCJ, who noted that she would have awarded. indemnity benefits to Ms. Maxwell had she been given the doctor’s report prior to or at trial. The WCJ felt that this report was not newly discovered evidence and therefore not grounds for a new trial under La. C.C.P. art.l972(2), and that modification under La. R.S. 23:1310 was not an option because the judgment made no award of benefits and therefore there was nothing to modify.
The record shows that Ms. Maxwell received treatment on the night t of her injuries at the Glenwood ER, then saw Dr. Coleman once on January 28, 2014. .Because of her employer’s refusal to pay for or authorize further treatment,, claimant was prevented from obtaining any other medical care. Claimant’s attorney filed a motion for treatment by Ms. Maxwell’s choice of | iaphysicians after she had been without medical treatment for' approximately two months. As noted above, the WCJ ordered an evaluation, not treatment, which is exactly what Dr;' Coleman and apparently Dr. Danna provided. In Dr. Coleman’s medical records, the nurses’ note's for May 14, 2014, the date of Ms. Maxwell’s evaluation, indicate that claimant “reported ins. giving her trouble paying for visits and tests. On 4/29/14 Atty. Street approved a pt. visit to our office.” Thereafter, on June 4, 2014, the nurses’ notes reflect that Dr. Coleman faxed the workers’' compensation form as well as a treatment plan for Ms. Maxwell to LWC (Louisiana Workers’ Compensation, apparently defendant’s compensation carrier), and on June 19, 2014, the notes show that a form requesting prior approval for an MRI was faxed. Having received no response from the insurer, on July 8, 2014, a representative from- Dr. Coleman’s office called and was told that “additional discovery” was. required and -no further tests would be approved.
Claimant was unable to establish whether she was disabled, i.e., entitled to TTD benefits, because she had no medical care or treatment other than one ER visit, two visits to a family practitioner and one examination by an ENT doctor prior to the hearing. Obviously the WCJ could not make a determination of disability based on the lack of a specific expert opinion on disability. However, penalizing the claimant, not the employer who denied her the opportunity to receive treatment and thus obtain the evidence to show her disability (or lack thereof), flies in the face of the benevolent goals of Louisiana’s workers’ compensation law which is to ■ ensure prompt medical attention .to injured workers, Authement, supra.
I uLa. R.S. 23:1310.8(A)(1)‘ provides that: The power and jurisdiction of the workers’ compensation-judge over each case shall be continuing and he may, upon *660 application by a party and after a contradictory hearing, make such modifications or changes with respect to former findings or orders relating thereto if, in his opinion, it may be-justified, including the right to require physical examinar tions as provided for in R.3. 23:1123; however, upon petition filed by the employer or insurance carrier and the injured employee or other person entitled to compensation under the Worker’s Compensation Act, a workers’ compensation judge shall have jurisdiction to consider the proposition of whether or not a final settlement may be had . between the parties presenting such petition, subject to- the provisions of law relating to settlements in workers’ compensation cases.
Courts of appeal have the power to remand a case for the introduction of additional evidence if grave injustice might result from failure to do so. La. C.C.P. art. 2164. Such a remand is warranted only when the new evidence, is likely to affect the outcome of the case, The power to remand on this basis should be exercised sparingly. Whether a particular case is remanded is a matter over which the court has much discretion and is governed by the particular facts and circumstances in each case. Barnhill v, A-1 Remodeling, 02-0357 (La.App. 1st Cir.07/02/03), 858 So.2d 661, writ denied, 03-2159 (La.11/14/03), 858 So.2d 419.
• The testimony at trial indicated that Ms. Maxwell suffered severe damages as a result of the criminal assault upon her person. Allowing the introduction of the additional evidence, particularly the letter from Dr. Coleman attached to Ms. Maxwell’s motion, will obviously affect the outcome of the case and thus prevent a grave injustice which would otherwise occur.
[ ifjTho WCJ could have held the record open for claimant to obtain the medical treatment to which she was entitled, then continued the hearing, at which time both parties could, have presented evidence on the-issue of disability and Ms. Maxwell’s entitlement thereto. See, e.g., Mitchell, supra. We will therefore • reverse that portion of the WCJ’s judgment denying TTD benefits to claimant, and remand the matter so that evidence on the issue of claimant’s disability can- be thoroughly evaluated by the WCJ. Id.; Francisco v. Harris Management Co., 94-136 (La.App. 3d Cir.10/05/94), 643 So.2d 386; Bourque v. Riviana Foods, Inc., 611 So.2d 669 (La.App. 3d Cir.1992).

Claimmt’s Request for Additional Attorney Fee ■

In her answer to the appeal, Ms, Maxwell has requested an award of attorney fees for her counsel’s work on appeal. Having successfully defended her employer’s appeal, in addition to obtaining the relief sought in her answer, claimant ia entitled to an additional'attorney’s fee. Frith v. Riverwood, 04-1086 (La.01/19/05), 892 So.2d 7; Key v. Monroe City School Board, 45,096 (La.App.2d Cir.03/10/10), 32 So.3d 1144; Gasway v. Cellxion, Inc., 44,-638 (La.App.2d Cir.01/27/10), 31 So.3d 566. We thus award $2,000 as an attorney’s fee for the additional work done by claimant’s attorney in defending and answering the appeal.

Conclusion

For the reasons set forth above,' the WCJ’s determination that claimant failed to prove a disability and therefore was not entitled to I ^indemnity benefits is REVERSED. In all other regards, the WCJ’s judgment is AFFIRMED.
IT. IS . FURTHER .ORDERED that claimant be awarded $2,000. as an attorney’s fee for defending-and answering this appeal. This matter is REMANDED for *661 further proceedings in accordance with this opinion. Costs are assessed against defendant, Care Solutions, Inc.