Judgment rendered August 10, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,574-WCA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

EDDRINA WOODARD                          Plaintiff-Appellee

versus

BROOKSHIRE GROCERY CO.                   Defendant-Appellant

* * * * *

Appealed from the
Office of Workers' Compensation, District 1-W
Parish of Caddo, Louisiana
Trial Court No. 20-02950

Brenza Irving Jones
Workers' Compensation Judge

* * * * *

THE SMITH LAW OFFICE, LLC          Counsel for Appellant
By: Eskridge E. Smith, Jr.

FISCHER LAW                        Counsel for Appellee
By: Timothy R. Fischer

MANNO LAW FIRM, LLC
By: Mark Kenneth Manno

* * * * *

Before PITMAN, STEPHENS, and ROBINSON , JJ.

**STEPHENS, J.**

This is a workers' compensation case. Defendant, Brookshire Grocery Company ("Brookshire"), has appealed from an adverse judgment rendered by the workers' compensation judge ("WCJ") in favor of claimant, Eddrina Woodard ("Eddrina"). For the reasons set forth below, we affirm.

## FACTS/PROCEDURAL BACKGROUND

This case arises out of a fall that occurred while Eddrina was working as a pharmacy technician at the Brookshire's Grocery on Kings Highway in Shreveport, Louisiana, on September 26, 2019. Eddrina's job duties included taking and typing in prescriptions, putting up medications, assisting the pharmacist, and providing customer service to persons needing help in the pharmacy. On the date of her accident, Eddrina was standing at her computer station at the pharmacy counter when she fell after suffering a seizure. As a result of her fall, Eddrina sustained injuries to her right shoulder. Surveillance cameras in the store recorded the entire incident.

City of Shreveport EMS were dispatched to the store. Eddrina was taken by ambulance to the Willis-Knighton Bossier emergency room. Records show that she was conscious but disoriented, with complaints of right arm pain, pain to the right side of her head, and lip swelling. Additionally, Eddrina's medical records reflect that she suffered a "single isolated seizure," which was later confirmed by her treating neurologist, Benjamin Nguyen. Within days of the accident, Eddrina presented at an urgent care facility and to Dr. William Maranto, her family doctor, with complaints of right arm-elbow pain and difficulty moving her arm.

On October 21, 2019, Eddrina saw Dr. Nguyen to be evaluated for seizures and pain in her right shoulder. An MRI of her right shoulder

performed that day revealed an interior dislocation-relocation injury, a Bankart fracture, and a tendon tear. Eddrina was referred by Dr. Nguyen to an orthopedist. On November 6, 2019, she was examined by Dr. George Byram, who performed shoulder surgery on December 23, 2019. Dr. Jenness Courtney examined Eddrina on March 24, 2020, for complaints of right shoulder pain. Dr. Byram released Eddrina to return to full-duty work without restrictions on August 5, 2020. She continued treatment with Dr. Courtney, who as of December 30, 2020, opined that she was restricted from work until her next evaluation.

Due to Brookshire's denial of a request for benefits made by Eddrina, she filed a disputed claim for compensation on May 13, 2020, with the Office of Workers' Compensation ("OWC") for her shoulder injury. The issues to be resolved by the WCJ at trial included: (1) whether Eddrina's injury arose out of her employment; (2) if so, whether the injury was compensable; (3) the nature and extent of the injury; (4) Eddrina's current medical status; (5) whether she was entitled to medical treatment and expenses; (5) whether Brookshire was entitled to a credit for medical expenses paid by a group health insurer; and (6) whether Eddrina was entitled to an award of penalties and attorney fees.

Following trial on March 18, 2021, the WCJ made factual findings, *inter alia*, that Eddrina was injured in the course of her employment, her fall arose out of her employment, and her shoulder injury was compensable. In accordance with those factual findings, on July 15, 2021, the WCJ rendered judgment in favor of Eddrina, awarding her: $386.33 in weekly temporary total disability benefits from the date of her accident until circumstances justify a change, or in accordance with law, with Brookshire being given a

2

credit for disability payments already made in the amount of $4,627.35; past medical expenses, less a credit for payments made by any group health insurer; penalties in the amount of $4,000.00; attorney fees in the amount of $15,000.00; and, interest in accordance with law. It is from this judgment that Brookshire has appealed.

## DISCUSSION

### *Whether the WCJ erred in finding that claimant's accident and injury were within the course and arising out of her employment with Brookshire*

Brookshire's first three assignments of error will be addressed together. In its first assignment of error, Brookshire urges that the WCJ erred in determining that Eddrina's seizure did not cause her fall, and that the fall was a compensable accident in the course and scope of her employment. In its second assignment of error, Brookshire contends that the WCJ erred in failing to require proof that the seizure "arose out of" Eddrina's employment. In its third assignment of error, Brookshire argues that the WCJ erred in finding the fall compensable. It is Brookshire's position that the wrong legal standard was applied when the WCJ concluded that Eddrina's fall arose out of her employment.

According to Brookshire, "[t]he [WCJ's] statements in the oral reasons for judgment evidence legal and manifest error in the fact-finding process, requiring reversal of the trial court, with *de novo* review of the record." Brookshire focuses its argument in support of the first and third assignments of error on specific portions of the WCJ's reasons for judgment and parts of the record in relation thereto.

We decline to address any of Brookshire's argument related to the WCJ's reasons for judgment. It is well-settled that the trial court's oral or

3

written reasons for judgment form no part of the judgment, and that appellate courts review judgments, not reasons for judgment. *Wooley v. Lucksinger*, 2009-0571 (La. 4/1/11), 61 So. 3d 507, 572; *Bellard v. American Central Insurance Co.*, 2007-1335 (La. 4/18/08), 980 So. 2d 654; *Morgan v. Glazers Wholesale Drug Co.*, 49,209 (La. App. 2 Cir. 8/13/14), 147 So. 3d 295. Judgments are often upheld on appeal for reasons different than those assigned by the trial judges. *Wooley*, *supra.* "The written reasons for judgment are merely an explication of the trial court's determinations. They do not alter, amend, or affect the final judgment being appealed[.]" *Id*., citing *State in the Interest of Mason*, 356 So. 2d 530, 532 (La. App. 1 Cir. 1977); *Morgan, supra*. Instead, reasons for judgment can be used by an appellate court to gain insight into the district court's judgment, which, if necessary in this case, we shall do.

On the other hand, Eddrina urges that the WCJ did not err in finding that her fall arose out of and in the course of her employment with Brookshire. She contends that this finding, as well as the WCJ's determination that her shoulder injury was caused by her fall, are both supported by the evidence in the record. According to Eddrina, under Louisiana Workers' Compensation Act ("LWCA"), she was required to establish personal injury by accident arising out of and in the course of her employment with Brookshire by a preponderance of the evidence.

Factual findings of a WCJ are subject to the manifest error standard of review; therefore, in order for a reviewing court to reverse a WCJ's factual findings, it must find that a reasonable factual basis does not exist and the record establishes that the factual findings are clearly wrong. *Lafayette Bone & Joint Clinic v. Louisiana United Business SIF*, 2015-2137 (La. 6/29/16),

4

194 So. 3d 1112; *Dean v. Southmark Construction*, 2003-1051 (La. 7/6/04), 879 So. 2d 112; *Arabie v. CITGO Petroleum Corp.*, 2010-2605 (La. 3/13/12), 89 So. 3d 307; *Mart v. Hill*, 505 So. 2d 1120 (La. 1987).

Under the manifest error rule, the reviewing court does not decide whether the WCJ was right or wrong, but only whether its findings are reasonable. *Elmuflihi v. Central Oil & Supply Corp.*, 51,673 (La. App. 2 Cir. 11/1/17), 245 So. 3d 155, *writ denied*, 2017-2009 (La. 2/23/18), 237 So. 3d 1189. The reviewing court is not permitted to reweigh the evidence or reach its own factual conclusions from the evidence. *Id.* The manifest error standard applies even when the WCJ's decision is based on written reports, records, or depositions. *Bruno v. Harbert International, Inc.*, 593 So. 2d 357 (La. 1992); *Trejo v. Canaan Construction, LLC*, 52,697 (La. App. 2 Cir. 6/26/19), 277 So. 3d 499; *Harris v. City of Bastrop*, 49,534 (La. App. 2 Cir. 1/14/15), 161 So. 3d 948.

An employee is entitled to workers' compensation benefits if he receives personal injury by accident arising out of and in the course of her employment. La. R.S. 23:1031(A); *Buxton v. Iowa Police Dept.*, 2009-0520 (La. 10/20/09), 23 So. 3d 275; *McLin v. Industrial Specialty Contractors, Inc.*, 2002-1539 (La. 7/2/03), 851 So. 2d 1135; *Elmuflihi*, *supra*; *Calumet GP, LLC v. Garrett*, 50,341 (La. App. 2 Cir. 1/20/16), 186 So. 3d 716, *writ denied*, 2016-0301 (La. 4/8/16), 191 So. 3d 587; *Scott v. Super one Foods*, 45,636 (La. App. 2 Cir. 9/29/10), 48 So. 3d 1133. An employment-related accident is an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration. La. R.S.

5

23:1021(1); *Calumet GP, LLC, supra*. The claimant has the burden of establishing her disability and its causal connection to the work-related accident by a preponderance of the evidence. *Buxton*, *supra; McLin, supra; Miller v. Rayville Manufacturing*, 53,573 (La. App. 2 Cir. 11/18/20), 307 So. 3d 1138.

The two requirements of "arising out of employment" and "course of employment" are separate but mutually interdependent concepts used to determine whether the injury is sufficiently related to the employment to warrant coverage under the system of workers' compensation. *Mundy v. Dept. of Health & Human Resources*, 593 So. 2d 346, 349 (La. 1992); *Elmuflihi*, *supra*; *Maxwell v. Care Solutions, Inc.*, 50,088 (La. App. 2 Cir. 9/30/15), 179 So. 3d 650, *writ denied*, 2015-1954 (La. 11/30/15), 184 So. 3d 36. These requirements should not be considered in isolation, and a strong showing of one can overcome or strengthen a weaker showing of the other. *Mundy, supra*; *Elmuflihi, supra*; *Maxwell, supra*; *Mitchell v. Brookshire Grocery Co.*, 26,755 (La. App. 2 Cir. 4/5/95), 653 So. 2d 202, *writ denied*, 1995-1115 (La. 6/16/95), 655 So. 2d 339.

An accident occurs in the course of employment when the employee sustains an injury while actively engaged in the performance of her duties during working hours, either on the employer's premises, or at other places where employment activities take the employee. *Mundy, supra*; *Elmuflihi, supra*; *Maxwell, supra*. The principal criteria for determining course of employment are time, place, and activity. *Id.* An accident arises out of employment if the conditions or obligations of the employment caused the employee in the course of her employment to be at the place of the accident at the time the accident occurred. *Elmuflihi, supra*. When an employee is

6

squarely within the course of her employment, virtually any risk has been considered arising out of employment. *Mundy, supra; Elmuflihi, supra; Maxwell, supra.*

In *Guidry v. Serigny*, 378 So. 2d 938 (La. 1979), the trial court declined to award compensation benefits to a cook who had fallen while on her way from the storage area of a restaurant to its kitchen. The evidence was that Mrs. Guidry had fallen either because she fainted, had a heart attack, or slipped on a recently waxed floor. *Id.* at 939. According to the trial court, because the plaintiff failed to show a causal relationship between her employment and the spell or heart attack, she was not entitled to recovery. The appellate court affirmed. The Louisiana Supreme Court granted certiorari to determine whether Mrs. Guidry's accident arose out of and in the course of her employment. Finding that it was such an accident, the supreme court reversed the appellate court's judgment. *Id.*

The supreme court noted that it was apparent that Mrs. Guidry's accident occurred during the course of her employment—she was on the job and about her employer's business as a cook when she fell and injured herself. "The seemingly more difficult issue is whether the accident which injured the plaintiff was one which arose out of her employment." *Id.*

The court in *Guidry* emphasized that the plaintiff's accident was ***not the fainting spell, heart attack or slip which may have caused her to fall, but was the fall itself, and that this was so regardless of the precipitating reason therefor.*** *Id.* at 939-40. (Emphasis added). According to the supreme court, the inquiry is twofold. First, it must be determined whether the employee was then engaged in her employer's business and secondly, did the necessities of the employer's business reasonably require that the

7

employee be at the place of the accident at the time of the accident. *Id.*, citing *Kern v. Southport-Mill*, 174 La. 432, 141 So. 19 (1932). The supreme court then held:

> Applying this standard to the present accident, it is apparent that the fall arose out of Mrs. Guidry's employment. When the plaintiff fell, she was carrying a mayonnaise jar from the storage area to the kitchen in order to prepare for the noon meal. This activity was certainly in pursuit of her employer's business. It is equally apparent that her employment required that she be in the area where the accident occurred. We therefore hold that Mrs. Guidry's fall was an accident arising out of and in the course of employment within the meaning of R.S. 23:1031.

*Guidry*, *supra* at 940.

In *Fontenot v. Wal-Mart Stores, Inc.*, 2003-1570 (La. App. 3 Cir. 4/7/04), 870 So. 2d 540, *writ denied*, 2004-1131 (La. 6/25/04), 876 So. 2d 843, Ms. Fontenot had a seizure at work; during the seizure, she fell to the floor and hit her head, cracking her skull. Ms. Fontenot had emergency surgery, which led to an infection that required additional surgical procedures. Her employer, Wal-Mart, took the same position as Brookshire in this case, that the employee's injuries did not arise in the scope of her employment, and refused to pay wage benefits or provide medical benefits. Ms. Fontenot filed a disputed compensation form and following a hearing, the WCJ found that she had suffered an injury in the course and scope of her employment and ordered Wal-Mart to pay workers' compensation and medical benefits. The WCJ also assessed penalties and attorney fees based on her finding that the employer failed to reasonably controvert Ms. Fontenot's claim.

On appeal, the Third Circuit held:

> Despite the fact that Ms. Fontenot suffered from a pre-existing illness—epilepsy—that apparently contributed to her accident, we note that, according to *Guidry* [*v. Serigny*, 378 So. 2d 938

8

(La. 1979),] and *Morris* [*v. City of Opelousas*, 572 So. 2d 639
(La. App. 3 Cir. 1990)], this does not foreclose her recovery of
workers' compensation and medical benefits in this matter[.]
[W]e find that Ms. Fontenot's accident occurred in the scope of
her employment. At the time of her fall, Ms. Fontenot was
carrying bread from the bakery to the deli in accordance with
her employment responsibilities. In addition, the record
indicates that her employment required her to work in the
bakery department on the morning of the accident. We find no
manifest error in the workers' compensation judge's ruling that
Ms. Fontenot sustained an accident in the course and scope of
her employment.

*Fontenot*, 870 So. 2d at 545. *See also, Woodard v. Chicago Bridge & Iron*,

2019-891 (La. App. 3 Cir. 7/22/20), 305 So. 3d 376; *Wainwright obo*

*Wainwright v. American Multi-Cinema, Inc.*, 2019-0019 (La. App. 1 Cir.

9/27/19), 291 So. 3d 1080; and, *Guillory v. Gulf States Utilities*, 1994-38 (La.

App. 3 Cir. 10/5/94), 643 So. 2d 488.

### Trial Testimony and Medical Evidence

Eddrina testified that prior to her accident, she had worked as a

pharmacy tech for about 23 years—with Brookshire for 12 of those years.

She stated that the day of her accident is a blur. Had she not seen the video,

she would not really remember it. According to Eddrina, the last thing she

remembered that day was standing at her work station and telling the cashier,

"Don't take any more flu shots." Then she recalled looking up at a

paramedic in the ambulance. In the emergency room, Eddrina saw her

family, and, as far as the problems she experienced, she knew her head was

hurting and she kept saying, "Something is wrong with my arm. My arm is

hurting."

Eddrina testified that a few days later, she followed up with her family

physician, Dr. Maranto. He used the X-rays from the emergency room and

told her he didn't see anything but wanted to get an MRI on her head. Dr.

9

Maranto referred her to Dr. Nguyen, a neurologist, who did further MRIs and an EEG. Dr. Nguyen found nothing wrong with her brain, but prescribed an anti-seizure medication which she still takes. Because she complained of arm pain, Dr. Nguyen had an MRI of her arm done; he also recommended that she see an orthopedic physician.

Dr. Byram was the first orthopedic doctor who treated Eddrina. She testified that he reviewed her MRI with her and told her that he doesn't know how anyone missed what was wrong with her arm. It was shattered and she was definitely going to need surgery. After the surgery Dr. Byram performed in December 2019, Eddrina stated that she wasn't able to go to physical therapy like she should have because of insurance issues and COVID. She testified that she still has problems and limitations because of her shoulder, such as reaching forward and overhead, as well as stiffness that would impact her ability to perform her job as a pharmacy tech.

On cross-exam, Eddrina acknowledged that Dr. Byram released her from his care without restrictions on August 5, 2020. She received short-term disability benefits under Brookshire's program for 13 weeks after surgery and long-term disability benefits through August 24, 2020.

Randy Modisett, Brookshire's in-house claims supervisor, stated that he denied Eddrina's claim because it didn't appear to arise out of her job duties. His investigation showed that she fell because of a seizure. Mr. Modisett testified that Eddrina never tried to come back to work after her surgery. According to him, Brookshire can accommodate her restrictions should she request to return.

Medical records show that on October 21, 2019, Eddrina saw Dr. Nguyen, the neurologist to whom she was referred by Dr. Maranto for

10

evaluation. In relating her history, she reported to the doctor continued pain in her right shoulder. Because of Eddrina's shoulder complaints, Dr. Nguyen ordered an MRI of her right shoulder, which showed a tendon tear and fracture of her right shoulder.

Eddrina first saw Dr. George Byram on November 6, 2019. His medical records show that she reported right shoulder pain radiating to her right arm. She described the pain as aching and sharp and noted that lifting and movement aggravated her shoulder. Other symptoms Eddrina described to Dr. Byram included decreased mobility, joint instability and tenderness, popping, weakness, and tenderness, as well as insomnia.

On November 8, 2019, Dr. Byram and Eddrina reviewed her MRI results. The MRI showed a bony Bankhart lesion, which is an anterior-inferior glenoid socket fracture, with a labrum injury, as well as cartilage damage with mild Hall-Sachs deformity. Dr. Byram performed surgery on December 23, 2019; he repaired the acute labral tear and associated bony Bankart fracture. According to Dr. Byram, the surgery was successful, but Eddrina's recovery was slow due to an initial inability to participate in physical therapy.[1] His medical records show that as of May 2, 2020, Eddrina still had continued pain and stiffness. She also reported continued difficulty with raising her right arm. Dr. Byram stressed to her the importance of getting back into physical therapy and gave her an injection in her shoulder to help with her symptoms and bursitis (inflammation).

On August 5, 2020, Dr. Byram reported that Eddrina showed full strength and near complete range of motion compared to her contralateral

_____

[1] This was due at first to the driving restrictions imposed by Dr. Nguyen in November 2019 (these expired in April 2020), and then partially because of COVID.

11

shoulder. He indicated that he would release her for full activity "as tolerated" without restrictions and would see her back in the future as needed. He noted, however, that Eddrina was let go from her job in March 2020.

Eddrina first saw Dr. Jenness Courtney on March 24, 2020. Dr. Courtney's records reflect that Eddrina related to him her history of a seizure and fall while working on September 26, 2019. She stated that she had shattered her right shoulder. Eddrina told Dr. Courtney of her surgery on December 23, 2019, and that she was still in a lot of pain. She also reported right shoulder tenderness and pain, as well as a limited range of motion, residual headaches and stuttering, and an inability to sleep since her accident.

Eddrina treated with Dr. Courtney again on April 9, September 17 and 24, and December 30, 2020. On all visits, she reported continued pain in her right shoulder. On December 30, 2020, Dr. Courtney advised Eddrina to engage in no lifting or strenuous activities, remain off work until the next re-evaluation, and take 800 mg of ibuprofen as needed for pain.

*Analysis*

At the time of her accident, Eddrina was employed by Brookshire, on her employer's premises, on the time clock, and standing at an assigned work location, having just finished assisting in administering flu vaccines. The fact that her fall was not directly caused by a work-related activity, but instead by a seizure does not negate the fact that Eddrina's accident occurred in the course of and arising out of her employment with Brookshire. *See, Mundy*, *supra*; *Elmuflihi*, *supra*. Louisiana law does not disqualify an employee from entitlement to workers' compensation benefits as a result of sustaining injuries from an otherwise compensable accident under Louisiana workers' compensation law because it may have been immediately preceded

or possibly caused by an employee's idiopathic[2] seizure. *See, Guidry, supra; Woodard*, *supra* at 381; *Guillory, supra* at 491. We find no error in the WCJ's determination that Eddrina's fall was a compensable accident under the LWCA.

### *Whether the WCJ erred in awarding temporary total benefits to claimant*

In its fourth assignment of error, Brookshire asserts error in the WCJ's award of temporary total disability benefits to Eddrina based upon the determination that her injury was caused by her employment with Brookshire. According to Brookshire, the evidence fails to establish that Eddrina was disabled from injuries caused by her seizure and resulting fall.

Eddrina argues that once she established by a preponderance of the evidence that she sustained injury in an accident arising out of and in the course of her employment with Brookshire, pursuant to La. R.S. 23:1031, the WCJ was mandated to require that Brookshire pay her past medical expenses and weekly temporary total disability benefits.

As noted above, even if an employee sustains a work-related accident, she must also prove by a preponderance of the evidence injury or disability together with a causal connection between the accident and the injury to be entitled to workers' compensation benefits. *Buxton*, *supra*; *Miller*, *supra*; *Bradley v. St. Francis Medical Center*, 51,572 (La. App. 2 Cir. 9/27/17), 244 So. 3d 722.

A workers' compensation claimant seeking temporary total disability benefits bears the burden of proving, by clear and convincing evidence, her

---

[2] "Idiopathic" means arising spontaneously or from an unknown cause. "Idiopathic." *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/idiopathic. Accessed 28 Jul. 2022.

13

inability to engage in any type of employment. La. R.S. 23:1221(1)(c);

*Iberia Medical Center v. Ward*, 2009-2705 (La. 11/30/10), 53 So. 3d 421;

*Buxton*, *supra*; *Sanchez v. Caesar's Entertainment, Inc.*, 49,864 (La. App. 2

Cir. 6/24/15), 166 So. 3d 1283. La. R.S. 23:1221(1), which provides for the

payment of temporary total disability benefits, states in part:

> (a) For any injury producing temporary total disability of an
> employee to engage in any self-employment or occupation for
> wages, whether or not the same or a similar occupation as that in
> which the employee was customarily engaged when injured, and
> whether or not an occupation for which the employee at the time
> of injury was particularly fitted by reason of education, training,
> or experience, sixty-six and two-thirds percent of wages during
> the period of such disability.
> ….
>
> (c) …[C]ompensation for temporary total disability shall be
> awarded only if the employee proves by clear and convincing
> evidence, unaided by any presumption of disability, that the
> employee is physically unable to engage in any employment or
> self-employment, regardless of the nature or character of the
> employment or self-employment, including but not limited to
> any and all odd-lot employment, sheltered employment, or
> employment while working in any pain, notwithstanding the
> location or availability of any such employment or self-
> employment.
>
> (d) An award of benefits based on temporary total disability
> shall cease when the physical condition of the employee has
> resolved itself to the point that a reasonably reliable
> determination of the extent of disability of the employee may be
> made and the employee's physical condition has improved to the
> point that continued, regular treatment by a physician is not
> required.

*Analysis*

From Eddrina's testimony, particularly how she discussed her arm

symptoms and complaints (which is apparently how she reported them to

treating medical personnel as well), it is understandable how her shoulder

injury was not diagnosed initially. Furthermore, there was no evidence

whatsoever of a subsequent or intervening cause for Eddrina's shoulder

14

injury. While Dr. Byram released Eddrina to return to work on August 5, 2020, her other orthopedic physician, Dr. Courtney, opined that, based upon her continued pain and limited range of motion, she was still restricted from all work duties as of December 30, 2020. As such, the workers' compensation judge was faced with a problem common in workers' compensation cases—conflicting medical opinions.

When the testimonial evidence of expert witnesses differs, be that live testimony, written reports, records or depositions, it is the responsibility of the trier of fact to determine which evidence is most credible. The workers' compensation judge is granted considerable discretion in evaluating expert testimony, and her decision to accept the testimony of one expert over the conflicting testimony of another expert can never be manifestly erroneous. *Bruno*, *supra*; *Frye v. Olan Mills*, 44,192 (La. App. 2 Cir. 4/8/09), 7 So. 3d 201; *Richard v. Vermilion Hospital*, 2010-335 (La. App. 3 Cir. 6/9/10), 41 So. 3d 1219, *writ denied*, 2010-1611 (La. 10/8/10), 46 So. 3d 1269; *Fontenette v. McDermott, Inc.*, 1995-0190 (La. App. 1 Cir. 10/6/95); 694 So. 2d 266.

We find no error in the WCJ's determination that compensation and medical benefits are due in this case, subject to this Court's recognition that the temporary, total disability benefits will continue, but only within the parameters of La. R.S. 23:1221 as ordered by the WCJ in her judgment.

### ***Whether the WCJ erred in imposing penalties and awarding attorney fees***

Brookshire's last assignment of error is that because it reasonably controverted Eddrina's claim, the WCJ erred in awarding penalties and attorney fees in this case.

According to Eddrina, it was never disputed that she suffered an idiopathic fall while performing her employment duties in the pharmacy where she was required to be at the time of the fall. Without a reasonable basis to controvert Eddrina's claim, other than the fact that her seizure was admittedly not work-related, Brookshire spent all of its time and energy trying to attribute her shoulder injury to the seizure, without any evidence, medical or otherwise, to support such a theory. The WCJ did not err in imposing penalties and awarding attorney fees in this case, urges Eddrina.

Because one purpose of the LWCA is to promptly provide compensation and medical benefits to an employee who has suffered a work-related injury, a failure to timely provide payment can result in the imposition of penalties and attorney fees except when the claim is reasonably controverted. *Lafayette Bone & Joint Clinic, supra; Trejo, supra.* La. R.S. 23:1201(F) governs the assessment of penalties and award of attorney fees for an employer's failure to pay benefits or authorize medical treatment. La. R.S. 23:1201(F)(2) provides that this provision is inapplicable if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer had no control. *Lafayette Bone & Joint Clinic, supra*; *Trejo*, *supra*; *Smith v. Graphic Packaging, Inc.*, 51,590 (La. App. 2 Cir. 9/27/17), 244 So. 3d 755, *writ denied*, 2017-1806 (La. 12/15/17), 231 So. 3d 640.

In order to reasonably controvert a claim, a defendant must have some valid reason or evidence upon which to base the denial of benefits. *Lafayette Bone & Joint Clinic, supra*; *Trejo*, *supra*. Reasonably controverting a claim means that an employer has sufficient factual and medical information to reasonably counter that provided by the claimant. *Johnson v. Northwest*

16

*Louisiana War Veterans Home*, 51,875 (La. App. 2 Cir. 2/28/18), 246 So. 3d 681; *Smith*, *supra*; *Maxwell*, *supra*. The crucial inquiry in determining whether to impose penalties and attorney fees is whether the payor had an articulable and objective reason to deny payment at the time it took action. *Lafayette Bone & Joint Clinic*, *supra*; *Authement v. Shappert Engineering*, 2002-1631 (La. 2/25/03), 840 So. 2d 1181. The determination of whether an employer or insurer should be cast with penalties and attorney fees is a question of fact, subject to the manifest error or clearly wrong standard of review. *Id.*; *Trejo*, *supra*; *Johnson*, *supra*; *Smith*, *supra*.

*Analysis*

In the instant case, the WCJ based her award of penalties and attorney fees upon Brookshire's refusal to pay benefits because of its position that claimant's injury was caused by her seizure, not her fall. The WCJ observed that Louisiana jurisprudence has held that an otherwise compensable accident does not cease to arise out of one's employment simply because it can be attributed to a physical infirmity of the employee. The WCJ then referred to Dr. Byram's opinion that the injury he treated Eddrina for would have produced the pain she reported having in her shoulder, and that her shoulder dislocation was caused by impact (i.e., her fall), not her seizure. Finally, the WCJ took note of Dr. Byram's statement, after he watched the video of Eddrina's incident, that her injury could have developed as a result of impact to her elbow as she hit the floor. According to the WCJ, even if Eddrina's fall was attributable to the seizure, Brookshire would still be liable for workers' compensation benefits, and that was why attorney fees and penalties were appropriate in this case.

17

We cannot say the WCJ erred in determining that defendant lacked an articulable and objective reason for denying benefits to Eddrina in light of the facts of this case and applicable law. There was no medical evidence to support Brookshire's theory, other than possibly the fact that Eddrina reported her injury initially as right arm pain (to the doctor in the emergency room and to her family doctor) as opposed to right shoulder pain. Likewise, there was no evidence of an intervening or subsequent incident to which her shoulder injury could be attributed. This assignment of error is without merit.

## CONCLUSION

For the reasons set forth above, the judgment of the WCJ is affirmed. Costs are assessed against defendant, Brookshire Grocery Company.

**AFFIRMED.**